CHARLES BETTINGER, Appellant, v. IGNACE BETTINGER et al., Appellees.

**PARTNERSHIP:** **Evidence of—Sufficiency.** Evidence reviewed and
1  held insufficient to show the existence of a partnership.

**TRUSTS:** **Evidence of—Sufficiency.** Evidence reviewed and held
2  insufficient to establish a resulting trust.

**WORK AND LABOR:** **Father and Son—Implied Agreement.** Where
3  a son had the unrestricted control and management of the father's property and collected and converted the entire income thereof to his own use, the implication arises that the son was working for himself and not for the father.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, FEBRUARY 13, 1915.

ACTION in equity for an accounting and for other relief. Petition dismissed and plaintiff appeals.—*Affirmed.*

*Mitchell & Fitzpatrick,* for appellant.

*Healy, Burnquist & Thomas,* for appellees.

WEAVER, J.—The defendant, Ignace Bettinger, is father of the plaintiff and the other defendants are the widow and heirs of plaintiff's deceased brother, Eugene Bettinger. The petition alleges that Ignace Bettinger and his named sons were natives of Germany; that plaintiff first removed to the United States where he was later followed by his father and Eugene; that after the father's arrival in the year 1884, he with his two sons entered into a partnership to carry on the business of farming rented land in Iowa, each partner contributing to the enterprise all the money and property he then had; that as a matter of convenience the business of the partnership was carried on and the title to its property was held in the name of their father but that in fact Ignace, Charles and Eugene were the real owners, proprietors and parties in interest and in equal proportions, and that this partnership in the business of farming continued about seven years during all which time plaintiff gave his entire time and labor in serving or promoting the common or partnership enterprise. It is further alleged that in the year 1891 the partnership sold and disposed of all its property except horses and by mutual agreement the partners invested some or all of the assets of the firm in the purchase of certain lots in the city of Fort Dodge, Iowa, upon which they constructed a barn, purchased horses, carriages and other property with

which they established and carried on a livery and feed stable and continued in that business until September, 1911; that plaintiff with some assistance from Eugene was the active manager of the business giving to it all his time and labor and received no compensation therefor except his board and clothing and a small amount for his personal expenses; that the title to the property was in the name of Ignace Bettinger but was so taken and held by him in the interest of the partnership; that Eugene Bettinger died in August, 1911, and his interest in the partnership property is now represented by his widow and children who are made defendants herein; that in September, 1911, and while plaintiff was confined in the hospital at Knoxville, Iowa, Ignace Bettinger sold and disposed of all the personal property belonging to the partnership for the sum of $1,100 and refuses to account to plaintiff for any part of said sum, or for the rents and profits received from the real estate. It is further alleged that none of the agreements between the parties was ever reduced to writing but were wholly in parol. Plaintiff also claims that his services to the partnership were of the fair value of $300 per year in addition to the support which he had received, no part of which earnings has been paid.

Upon these allegations he asks that the partnership be dissolved, that he be decreed entitled to one-third of its assets including the real estate above mentioned and that said property be partitioned accordingly. He further asks by way of alternative relief that in case his claim of partnership be not sustained he may be awarded judgment for a money recovery in the sum of $12,000.

By way of amendment the plaintiff further alleges that in September, 1886, the partners employed one Schaefer to prepare a written agreement between them which would give the partnership the right to conduct the business in the name of Ignace Bettinger; that Schaefer did prepare a paper which was signed and executed by plaintiff and Eugene and duly recorded, but that said writing wholly fails to embody or

state the intention of the parties thereto and is in form and substance a bill of sale of the personal property of Charles and Eugene to Ignace; that no sale was in fact made and no consideration paid or given therefor. Plaintiff further prays that, if necessary to the granting of full relief to which he is entitled in the premises, said writing be re-formed to express the true meaning and intent of the agreement between the parties thereto.

The defendants deny that any partnership was ever agreed upon or entered into between plaintiff and his father and deny each and every other claim asserted by plaintiff for legal or equitable relief. They admit the making of the bill of sale and deny that it was made or intended for any purpose other than is expressed upon its face. It is further alleged that the property in Fort Dodge was purchased by and for Ignace Bettinger at the price of $2,250 of which he then paid from his own money the sum of $1,500 and secured the remaining $750 by mortgage, and that neither Charles nor Eugene contributed any part or fraction of said purchase price. It is further alleged that Ignace Bettinger purchased and paid for the livery stock with his own funds, such purchase being made from one Howard who gave him a written bill of sale therefor; that the livery stable was conducted and carried on by Charles and Eugene for themselves alone and not in partnership with their father, that they took and received all the earnings thereof and converted the same to their own use and that during all said period plaintiff continued to live and board with his parents without paying any compensation therefor as did Eugene also until he married some ten years before his death. The answer also pleads the laches of the plaintiff as a bar to his prayer for equitable relief and the statute of limitations in bar of his alternative demand for a money judgment.

The trial court after hearing all the evidence offered found the plaintiff had failed to sustain his said claims and dismissed his petition.

I. While we have been cited by counsel on either side to numerous authorities and precedents there is no marked difference concerning the legal and equitable principles which

1. PARTNER-
SHIP: evidence
of sufficiency.

govern cases of this kind. The real controversy is essentially one of fact. Under the issues joined the burden is upon the plaintiff to make good by a preponderance of evidence his allegation that a partnership was entered into between the father and his sons, Charles and Eugene. A careful reading of the record leads us to the conclusion that in this respect there is a failure of proof and that the finding of the trial court must be sustained. The plaintiff himself nowhere testifies unequivocally to an agreement or talk of partnership. It appears that when the parents came from Germany the two sons were then in possession of a rented farm in Webster county of this state, the lease of which would expire in 1886. Plaintiff's version of the circumstances is as follows:

"After father and mother came to Emil's in Illinois there was talk between me and my father and mother about coming out to Iowa and going farming, we said: 'We will go out to Iowa, together there was four of us, and go farming.' The four were father and mother and me and Gene. That was talked over at Emil's house, we talked it lots of times. I talked with my father and mother about these arrangements."

Thereafter the father, mother and two sons came to Iowa and made their home together on the rented farm. From that time until the death of Eugene and the mother, plaintiff made his home with his parents as also did Eugene until he married some ten years prior to his death. Plaintiff paid no board and so far as shown by the evidence bore no share of the family expenses. While on the farm above mentioned the sons continued to do the principal part of the work, sold the produce, paid the debts and purchased the necessary farm

machinery and plaintiff says that whatever surplus remained "we carried home and gave it to mother," and when they needed money they obtained it from her. At the expiration of the lease which Charles and Eugene held, when their parents arrived the family removed to another farm, the lease of which was made to the defendant Ignace Bettinger. At about the same time Charles and Eugene executed to their father the bill of sale mentioned in the pleadings, which upon its face purports to be an absolute transfer to the latter of the title to the property therein described being as we infer all the property then owned by the sons. The transaction resulting in the execution of this paper is involved in some uncertainty if not mystery. The presumption is of course that it was intended to effect just what its language plainly indicates and in the absence of a clear explanation to the contrary that presumption must prevail. The explanation attempted by the plaintiff is far from convincing and wholly inefficient to justify a reformation of the instrument. The claim that the parties employed one Schaefer to prepare a writing by which the alleged partnership business could be carried on in the name of Ignace Bettinger as a mere matter of convenience lacks plausibility. Ignace was but recently from Germany, unable to speak or understand the English language (as indeed he has ever since remained). He took no active part in the buying or selling or other business transactions except that from an early date after his arrival in Iowa he loaned small sums of money to neighbors seeking such accommodation. In the first place it is difficult to see how the use of the individual name of one of the alleged partners could serve any real purpose of convenience and if it did it would have seemed much more natural for them to select the name of one or both of the sons who in fact transacted its business. So far as shown Schaefer had no interest whatever in misleading Charles and Eugene or tricking them into executing a paper other or different than they desired and intended to make and no suggestion is made that Ignace

was a party to any fraud or mistake in that connection. There is some evidence from which the inference may be drawn that the title to the personal property was transferred to the father to hinder or delay the creditors of the sons. Plaintiff concedes that after the bill of sale was made an execution in favor of one of his creditors was levied on a horse described in the bill and that the father asserting the title acquired by such bill recovered its possession. He further testifies that when Schaefer prepared the paper, ''He said if we signed it it would be all right; nobody couldn't do nothing and we could do just the same business as before in father's name,'' a statement which perhaps furnishes the key to the real nature of the transaction. Whatever be the fact in this respect it is not a matter of controlling importance, though as an item of evidence it is not without some significance in arriving at the truth of the controversy involved in this action. The only witness who testifies to any agreement of partnership is Emil Bettinger, a brother of the plaintiff. He was present at the meeting in Illinois when the parents arrived from Germany and says, ''Charley and Gene and father and mother were going out to Iowa. It was talked over in my house between them to come out and farm together in partnership. I don't know how much each of them did put in.'' It will be observed that the witness makes no attempt to quote the language to which he refers but rather to give his conclusions therefrom. He does not state or profess to know the terms of the alleged agreement. It must also be said that an agreement to go to Iowa and enter the business of farming in partnership carries with it no presumption that when the business of farming was abandoned seven years later, the purchase of real estate in Fort Dodge and the establishment of a livery stable thereon were a partnership transaction. Of course, if we were to find or assume that the parties farmed in partnership and that the funds of the partnership were invested in the Fort Dodge property and business it would require no great amount of additional evidence to justify the implication that such invest-

ment and subsequent business was also a partnership venture. The burden of establishing such important fact is upon the plaintiff but so far as any direct testimony bears thereon he stands alone. He is unequivocally contradicted by his father in whom the uncontested title to the property has stood for more than twenty years. Unfortunately both the mother and Eugene who were the only other persons who could speak of the fact from personal knowledge are dead. There are no writings, documents or records throwing any light upon the question except the title papers, all of which upon their face corroborate the claim made by the father. If any books of account were kept they are not shown in the record. Upon such a state of the record we can do no otherwise than hold that plaintiff's unsupported testimony is insufficient to satisfy the burden of proof which the law casts upon him to overcome the denials of the defendant and the presumption which attaches to the conveyance and bill of sale by which defendant's title was acquired. It is doubtless true, as plaintiff claims, that he and Eugene had sole charge and control of the livery business. That fact is just as consistent with the theory that defendant with parental indulgence tacitly or expressly allowed his sons to take possession of the livery outfit, operate it to suit themselves and have and enjoy what profit they could make out of it as it is with the theory of partnership. Indeed it is more consistent for there is not the slightest showing that Ignace Bettinger assumed or exercised the authority of a partner in that business or showed the interest or familiarity of a partner therein at any time during the twenty years before the death of Eugene. Nor as we read the record do we find that any part of the proceeds of the business is traced to his hands. It is the claim of the plaintiff that such proceeds over and above expenses and personal allowances were placed in the hands of his mother, but even so, it falls far short of a showing of a partnership interest in the father. It must be remembered also that this business appears to have been of comparatively unimportant character.

The original investment in the livery stock aside from horses brought from the farm was but $500 and when the business was abandoned the property was closed out for $1,100. That such a business, burdened as it must have been with the support of the two brothers, one of whom was for ten years the head of a family, should have accumulated and had in store large profits seems quite improbable, or if such profits were made, no part thereof is found in the hands of the defendants. It is insufficient to say, as does plaintiff, in general terms that his mother and father put out in loans the money so received. Of what loans, when or where placed, or the amounts thereof he mentions but one specific instance and then the loan was made in plaintiff's name and the note delivered into his hands.

Much is said in the record and arguments of the habits of the plaintiff though the matter is perhaps of no material importance except as a side light in arriving at the truth of the issues joined in the pleadings. Plaintiff admits that he has long been in the habit of drinking intoxicants though not, he insists, to the extent of incapacitating him to do business. He concedes, however, that after the death of his mother and Eugene he "drank heavy for a while." About that time upon the complaint of his father he was committed to the inebriate hospital at Knoxville where he remained several months. During this absence the father sold out the livery stock and closed the barn. This act of the father on the one hand and the fact on the other hand that plaintiff, when his mother was about to die, went to the house and took $400 from the funds in her possession and converted it to his own use, brought about a feeling of hostility between father and son which has culminated in the present litigation, and the feeling between them is probably such that each speaks with a bias tending to some extravagance of statement. The father is far advanced in years and his memory is not always clear but concerning most of the material facts he speaks with a detail which is not overcome by the declarations of plaintiff, which

are almost altogether general in form and marked by absence of statement of specific facts.

The allegation of the existence of a partnership of which Ignace Bettinger was a member in the ownership of the Fort Dodge property and business has not been sustained. Whether a partnership existed between plaintiff and Eugene in his lifetime it is not material here to inquire.

II. What we have said renders unnecessary any extended consideration of plaintiff's claim to establish a resulting trust in his favor in the Fort Dodge property. The claim thus advanced is that if the court fails to find a partnership in the Fort Dodge property or business then a trust should be established in his favor because the money paid for said property was the joint fund of himself, brother and father, and the latter should therefore be decreed to hold the title so procured for the benefit of the sons to the extent of their proportionate contribution to the purchase price. Here again the question hinges solely upon the question of fact whether plaintiff, or plaintiff and Eugene, did so contribute. He swears he did and defendant swears as positively he did not. Defendant swears that the payment was made by him from money procured from Germany and explains the source of its procurement. Plaintiff and Emil say their father received no such sum from Germany but state no facts from which we can infer their ability or opportunity to know the truth in that respect. Assuming that all are trying to be candid, it is much easier for the sons to be mistaken as to the details of their father's business affairs than for him to be mistaken with reference thereto. So far as shown he alone is in position to speak with knowledge of the truth in this respect.

2. TRUSTS: evidence of: sufficiency.

There is no such clear or satisfactory proof as equity requires for engrafting a trust upon an unconditional conveyance of real property and the prayer of the plaintiff for such relief was properly denied by the trial court.

III. It is finally argued that if equitable relief be denied
that defendant should be adjudged to pay

**3. WORK AND LABOR: father and son: implied agreement.** plaintiff the value of his services for the twenty years or more since they removed to Fort Dodge.

The trouble with this demand is that the record is barren of any showing that plaintiff did serve or work for his father during any portion of this period. It is true he lived with his parents during all this time without charge. With Eugene he was allowed entire control of the livery business. They received the entire proceeds thereof. There is no indication anywhere that defendant demanded or exercised the right to direct the sons or control their discretion in its management. So far as shown the sons never in any manner accounted to him concerning this business nor does he now demand such an accounting. Though they used property belonging to their father with his consent they seem to have been working for themselves alone. They lived from and upon the business— he did not. There is no evidence whatever of any express contract of employment and no facts shown from which such contract can be implied.

The decree below appears to be right upon the record submitted to us and it is therefore—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.